(162 P.3d 832)

No. 96,181

STATE OF KANSAS, *Appellee*, v. ROGER K. KELLEY, *Appellant*.

Opinion filed July 27, 2007.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Hillary J. Boye*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Sheriff's deputies posted signs for southbound traffic on U.S. Highway 75 in Brown County stating "Drug dog working ahead" and "Narcotics officers working ahead." Officer Mickey Gruber sat in a lawn chair at the side of the road watching

southbound motorists as they approached these signs. Two other officers, Corey Lay and Justin Koontz, were positioned approximately ½ mile south of Gruber's position.

Gruber observed Roger Kelley driving southbound on Highway 75. Upon approaching the signs Kelley leaned over toward the passenger's side of his car and began moving around frantically. Kelley's vehicle drifted left of the highway centerline, and Gruber alerted Lay and Koontz by radio of Kelley's traffic infraction.

Lay signaled Kelley to stop his car at the side of the road. Koontz checked out Kelley's driver's license with the police dispatcher while Lay used his narcotics dog, Memo, to sniff the exterior of Kelley's car. Memo alerted Lay to the front passenger's side door of Kelley's car. When Lay directed Kelley to step out of the car, Kelley yelled "No" and drove away.

Lay pursued in his patrol car. Kelley ultimately pulled into a parking lot where Lay placed him under arrest. Lay then used Memo to search the interior of Kelley's car. Memo alerted Lay to a case on the passenger's side floorboard which was later determined to contain marijuana and methamphetamine. Lay also found approximately $4,060 in cash on the passenger's side seat and in Kelley's wallet.

Kelley was charged with possession of methamphetamine, possession of marijuana, felony obstruction of official duty, possession of drug paraphernalia, and fleeing or attempting to elude a police officer.

Kelley filed a motion to suppress the evidence obtained from his arrest, which the district court denied. Kelley was found guilty at trial of felony obstruction of official duty, possession of drug paraphernalia, and fleeing or attempting to elude a police officer.

### Felony Obstruction

Kelley argues that there was insufficient evidence to convict him of felony obstruction since his flight had been from a stop for a traffic infraction, not a felony.

K.S.A. 21-3808 defines obstruction of official duty as follows:

"(a) Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process

in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty.

"(b) (1) *Obstructing legal process or official duty in the case of a felony*, or resulting from parole or any authorized disposition for a felony, *is a severity level 9, nonperson felony*.

(2) Obstructing legal process or official duty in a case of misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case is a class A nonperson misdemeanor." (Emphasis added.)

## The complaint charged Kelley as follows:

"COUNT II. That within two years from date of filing, the above-named defendant, within the County of Brown, State of Kansas, then and there being, did then and there contrary to the statutes of the State of Kansas knowingly, intentionally and feloniously resist or oppose an authorized Law Enforcement Officer, to-wit: Sgt. Mickey Gruber, Corey Lay & Justin Koontz, while said officers was [*sic*] *in the discharge of an official duty, to-wit: traffic stop*. In violation of K.S.A. 21-3808. OBSTRUCTING OFFICIAL DUTY, a level 9 non-person felony." (Emphasis added.)

The jury was not asked to determine the quality of any obstruction they might find Kelley engaged in, *i.e.*, whether it was in connection with a felony or misdemeanor. The jury was instructed on this charge as follows:

"The defendant is charged in Count II with the crime of obstructing official duty. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

1. That Sgt. Mickey Gruber, Corey Lay, and Justin Koontz were authorized by law to discharge of an official duty of a traffic stop (sic);

2. *That the defendant knowingly and willfully resisted or opposed Sgt. Mickey Gruber, Corey Lay, and Justin Koontz in their discharge of an official duty of a traffic stop;*

3. That the act of the defendant substantially hindered or increased the burden of the officers in the performance of the officers' official duty;

4. That at the time the defendant knew or should have known that Sgt. Mickey Gruber, Corey Lay, and Justin Koontz were law enforcement officers; and

5. That this act occurred on or about the 15th day of July, 2005, in Brown County, Kansas." (Emphasis added.)

Crimes are classified as felonies, misdemeanors, traffic infractions, and cigarette or tobacco infractions. K.S.A. 2006 Supp. 21-3105. Kelley was stopped for crossing the centerline in violation of K.S.A. 8-1514. Some violations of the Uniform Act Regulating

Traffic, K.S.A. 8-1501 *et seq.*, do constitute misdemeanors, such as reckless driving (K.S.A. 8-1566), driving under the influence (K.S.A. 8-1567), and fleeing or attempting to elude (K.S.A. 8-1568). Kelley was separately convicted of violating this latter statute, fleeing or attempting to elude. However, a violation of K.S.A. 8-1514 is categorized as a traffic infraction. See K.S.A. 21-3105(2) and K.S.A. 8-2118(c). The traffic stop cited in the complaint upon which Kelley's obstruction conviction was predicated involved a traffic infraction which is neither a misdemeanor nor a felony. Under K.S.A. 21-3808, obstructing officers in their official duty of conducting a stop for a traffic infraction is not a felony. Kelley's conviction for felony obstruction is based upon conduct which does not constitute a felony under the statute. Accordingly, we must reverse his conviction for felony obstruction.

*Motion to Suppress*

Kelley argues that the officers detained him beyond the period needed to investigate a traffic infraction and that, in any event, the stop was pretextual.

The facts material to Kelley's suppression motion are not in dispute. Thus, whether to suppress the evidence becomes a question of law over which we have unlimited review. *State v. Porting,* 281 Kan. 320, 324, 130 P.3d 1173 (2006).

The fact that Kelley crossed the centerline provided a valid reason for the officers to perform a traffic stop of his vehicle. A traffic violation, even if pretextual, provides an objectively valid reason to effect a traffic stop. Once the driver is stopped, the officer is entitled to request a driver's license and vehicle registration and to run a computer check. *State v. Anderson,* 281 Kan. 896, 901-902, 136 P.3d 406 (2006). Memo was used to sniff the exterior of Kelley's car while Koontz ran a computer check of Kelley's driver's license, so the duration of traffic stop was not extended by this activity. Lay's use of a narcotics dog to sniff the exterior of Kelley's vehicle did not constitute a search for Fourth Amendment purposes. See *State v. Barker,* 252 Kan. 949, 957-58, 850 P.2d 885 (1993). There was extensive testimony regarding Memo's training as a drug dog. The officers had a reasonable, articulable suspicion

of illegal drug activity, justifying continued detention of Kelley for further investigation based upon Memo's reaction while sniffing the exterior of the car. The evidence Kelley sought to suppress was obtained in the course of that continued investigation. The district court did not err in denying Kelley's motion to suppress.

### Criminal History

Kelley argues that the district court erred in sentencing him without proving his prior convictions to a jury beyond a reasonable doubt. This argument was rejected in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), which we are bound to follow absent some indication our Supreme Court is departing from its holding in *Ivory*. *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). There being no such indication, this argument fails.

Affirmed in part and reversed in part.